(No. 53999.—

HUNTER CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Adolph Amelkin, Appellee).

*Opinion filed October 21, 1981.*

Cohn, Lambert & Ryan, Ltd., of Chicago (Pamela Karoff Kesler, of counsel), for appellant.

Tuite, Morrissey, Gesmer & Finnegan, of Rockford (Gerald F. Tuite and Gregory E. Tuite, of counsel), for appellee.

MR. JUSTICE WARD delivered the opinion of the court:

On December 1, 1977, Adolph Amelkin, who was employed as a pipefitter by the Hunter Corporation in the

construction of a nuclear plant in Byron, Illinois, injured his back when walking to a company warehouse to pick up building materials. He received medical treatment and remained off work until February 22, 1978. On March 14 he reinjured his back while lifting a railroad tie at work. Amelkin was 58 years of age and earned $458 per week or $23,816 per year. He filed two separate claims under the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*), which were consolidated at the arbitration hearing. The arbitrator's decision was that the claimant had suffered an accidental injury on December 1, 1977, which arose out of and was in the course of his employment. He was awarded $304.21 per week for 52 4/7 weeks for temporary total incapacity as a result of a disabling injury whose permanency the arbitrator found could not yet be determined. The arbitrator's order provided that the award did not bar the recovery of future compensation for temporary total or permanent disability and stated further that Hunter Corporation must provide "all necessary medical expenses, treatment, instruction, and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto" citing section 8(a) of the Workmen's Compensation Act. (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a).) The Industrial Commission modified and affirmed the arbitrator's decision. It extended the total period of temporary total disability to 82 4/7 weeks and also orderd that Hunter pay the "necessary tuition costs and expenses to attend Pace University" in New York City, where the claimant was a permanent resident, so that he may "return to approximately the same economic position as he was in prior to the accident ***." Hunter was also directed to pay $304.21 for each week the claimant was "pursuing vocational rehabilitation ***." The circuit court of Ogle County confirmed the decision of the Commission and Hunter appealed directly to this court under Rule 302(a)(2) (73 Ill.

2d R. 302(a)(2)).

The claimant testified that his occupation demands substantial physical labor. As a pipefitter, he is called upon to carry, bury, install and hang pipes and other materials weighing up to 100 pounds. On December 1, 1977, the claimant's foreman requested that he pick up some materials from the company warehouse. While walking to the warehouse with another employee he slipped on ice and fell on his back. He continued to work that day but felt a sharp pain in his lower back which gradually increased and spread to his right leg. This incident took place on Thursday. On Friday evening he went to the emergency room at the Swedish American Hospital in Rockford, where he was given pain medication. When he reported for work the following Monday he told the circumstances of his injury to his foreman, who sent him to the company nurse. She in turn referred him to Dr. Gerald Bowman, a physician of the Lundholm Clinic in Rockford. Dr. Bowman prescribed pain medication and diathermy treatment for his lower back and recommended that he not return to work until his condition improved. During his period of rest, the claimant was placed under the care of Dr. Donald Lyddon, Jr., an orthopedic surgeon, who was associated with the Lundholm Clinic and who also prescribed diathermy treatment and pain medication. The claimant testified that after several weeks Dr. Lyddon advised him that he could go back to work but "to take it easy." Though he still felt some pain in his lower back and right leg he returned to work as a pipefitter on February 22, 1978.

He worked for about three weeks, but on March 14, 1978, while lifting a 200-pound railroad tie with another employee, he said he experienced "excruciating pain" in his lower back. He lowered the tie and reported the injury to his supervisor.

As on the previous occasion, he was referred to Dr. Lyddon, to whom he complained of back pain and also that

his left leg had become painful, especially when he was trying to sleep. Between March and May of 1978, the claimant saw Dr. Lyddon regularly and received daily diathermy treatments. During this period the claimant told Dr. Lyddon of his wish to return to his home in New York City. He testified that the doctor told him to get a "nonphysical" job which would not require him to lift more than 35 pounds or require excessive bending or climbing. The claimant further stated that Dr. Lyddon would not sign a work release so that he could return to work at Hunter as a pipefitter.

He said that when it became apparent that Hunter was not going to place him in another position with the company, he returned in May 1978 to New York City, where he and his wife had an apartment. There he came under the care of Dr. William Jaffe, an orthopedic surgeon who prescribed pain medication and muscle relaxants as well as a program of exercise and weight reduction. Though the claimant lost 20 pounds, he testified that the pain in his lower back and both legs persisted. He remained under Dr. Jaffe's care until October of 1978. On October 18, the last time the claimant visited Dr. Jaffe, he was advised that, given his existing physical condition as well as the doctor's prohibition against lifting, climbing or excessive walking or standing, he should leave the occupation of pipefitter. Dr. Jaffe, however, did give the claimant a work release for light work.

The claimant testified that upon his return to New York he sent out 100 resumes in applying for a supervisory position in maintenance and other related areas. He had 12 interviews but no offers of employment. The claimant next applied to the New York Board of Education for a teacher's license. He successfully completed the oral and practical sections of the examination but failed the written academic portion.

Shortly thereafter, he applied for admission to Pace

University, a private institution in Manhattan, for the purpose of completing studies for a college degree so that, he said, he could teach pipefitting and plumbing in vocational training courses. The record shows that the claimant earlier had attended Brooklyn College on the G.I. Bill, attained a B average and earned 98 credit hours, 70 of which Pace University was willing to accept toward a degree in education. A total of 130 credit hours would be required for his degree at Pace. The tuition is $93 per credit hour.

The record shows that the claimant, at one time, under a temporary teaching license, taught pipefitting in New York under the Federal Manpower Development Program. He is being supported, he testified, by his wife, who is employed at Pace University, which is located across the street from their apartment.

The claimant's testimony was that he does some limited buying and selling of small collectibles, including antiques. He said, however, that he considers this activity more as a hobby than a profession even though at times it has contributed to his income. Because of his physical limitations he testified that he was not able to deal in antique furniture and other heavier objects. He has no store and has set up an exhibit only once at an antique show. The claimant's estimated value of his collectibles is four to five thousand dollars. During the six months preceding the arbitration hearing he has spent only $200 on antiques, he said. He carves minature statuettes, but stated that he does not sell them but instead gives them away to friends.

At the time of the arbitration hearing he complained of constant pain in his lower back and in both legs, which he said made it difficult to sleep. He testified that he suffers from numbness and pain in his right thigh, which is aggravated by long walks. He still takes medication to relieve pain, he testified.

Medical reports of June 1, 1978, of Dr. Lyddon introduced into evidence were to the effect that the claimant has

a "10 percent whole body physical impairment due to degenerative arthritis on the lumbar spine." A report prepared in March of 1979, however, by Dr. Gerald McDonald, which was introduced at the hearing, stated that the claimant has "acute injuries of the lower back and posterior pelvis, with spondylolisthesis involving the L5-S1 segment and with damage to the intervertebral disc at the L5-S1 segment, with bilateral sciatic nerve root involvement." The claimant still pays his union dues, but because of his condition he said that the union has not been able to place him in any job.

Section 8(a) of the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a)) authorizes awards for vocational rehabilitation for employees who sustain a compensable industrial injury.

The section, as well as requiring an employer to "pay for all *** necessary medical, surgical and hospital services thereafter incurred" by an employee after a work-related injury, provides that the "employer shall also pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto. If as a result of the injury the employee is unable to be self-sufficient the employer shall further pay for such maintenance or institutional care as shall be required." Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a).

Hunter does not deny that the claimant sustained a compensable injury or that he is no longer capable of continuing work as a journeyman pipefitter. The company maintains, however, that the claimant is not eligible for vocational rehabilitation and, further, that the Commission erred in holding, as a matter of law, that an employer is required to rehabilitate an injured employee to preinjury economic status.

Unlike many States where workmen's compensation statutes provide a detailed scheme on the question of

vocational rehabilitation, our statute under section 8(a), as set forth above, states only that an employer "shall also pay" for rehabilitative efforts when "necessary." Hunter contends that vocational rehabilitation is not necessary, though it acknowledges that the claimant cannot work as a pipefitter.

Here, as a result of the claimant's injury, his occupation as a journeyman pipefitter, in which he served for 30 years, is now closed to him. He was not offered another position with Hunter. His injury has imposed physical limitations which well may have affected his ability to secure other employment. The record supports the claimant's contention that he has made a good-faith effort to obtain regular and continuous employment for which he is qualified. He sent out 100 resumes seeking employment in the less physically demanding field of supervisory work. He interviewed with 12 prospective employers, but received no offers of employment.

Hunter claims that the claimant acquired knowledge and abilities in antique dealing and wood carving which could be marketed, making vocational rehabilitation unnecessary. Considering the evidence here the claim is extravagant. That one is able to generate some income through an activity does not of itself permit a conclusion that one can support oneself by that activity. The record shows that the claimant's interest in collectibles may be characterized as a hobby rather than as an activity through which the claimant is supporting himself.

Hunter's contention that the claimant's leaving Illinois should make the claimant ineligible for rehabilitation benefits does not persuade. That the claimant was advised by his physician that he could no longer work as a pipefitter because of his back condition and that he then decided to return to his wife and home in New York has no bearing on whether he requires and qualifies for vocational rehabilitation. At no time did Hunter offer the claimant less physically demanding employment. Considering the circumstan-

ces here, the Commission correctly found that the claimant qualified for rehabilitation benefits.

In view of the disposition we make of this case, we need not consider as an abstract question whether the Commission erred in finding, if indeed its finding is to be so interpreted, that the vocational rehabilitation program should return the claimant to his pre-injury economic position. We would observe, however, that as a general proposition an automatic and inflexible application of that standard would be unacceptable. Temporary earnings might be unrepresentatively high. Too, an injured employee earning subsistence level wages should not be chained to that standard.

We next consider whether the award here for the claimant's vocational rehabilitation was contrary to the manifest weight of the evidence. (*Vestal v. Industrial Com.* (1981), 84 Ill. 2d 469.) We deem that it was.

When an employee sustains a compensable injury which may require vocational rehabilitation, many jurisdictions have established procedures under which the employee is examined and evaluated by a State or a local rehabilitation agency or by trained medical personnel of the State's compensation board. A recommendation is then made as to whether rehabilitation assistance is necessary and, if so, what it should be. (See, *e.g.*, Minnesota: Minn. Stat. Ann. § 176.102, subd. 6 (West 1980 Pocket Part); Nebraska: Neb. Rev. Stat. § 48—162.01(1978); Maryland: Md. Ann. Code, art. 101, § 36(9)(a) (1979); New Hampshire: N.H. Rev. Stat. Ann. § 281:21—b (1978); Maine: Me. Rev. Stat. Ann., tit. 39, § 52 (1979).) The value of such a procedure is obvious. A court, rather than being compelled to gauge the necessity and value of a proposed rehabilitation program itself, is able to receive recommendations from trained rehabilitation personnel, which it can review.

In Illinois we do not have the benefit of such a procedure. Unless an employee has gotten rehabilitation counsel-

ing through some public or private agency, the nature and form of rehabilitation requested appears to be based on the wish of the claimant. We would point out, though, that there is no prohibition against the Commission's calling witnesses whose testimony would be helpful or calling on the claimant to produce evidence to support his requested program. Here the employee sought rehabilitation to cover the cost of obtaining a college degree in order that he might teach pipefitting or plumbing. There was no evidence that a degree was a qualification for this. (Earlier the claimant had taught pipefitting in a Federal program.) He had successfully completed oral and practical parts of an examination for a teacher's license to teach these subjects but had failed the academic portion of the examination. There is no evidence what his grade had been, whether he could have retaken the test, or whether he might have taken a specialized review or "cram" course. There is no evidence whether there are teaching positions available in the field, given the claimant's age, physical limitations, experience and background. The record does not show whether the claimant might be qualified for some other remedial or vocational training. The claimant seems only to have made a request that Hunter pay the expense of his completing work for a degree at Pace University. As stated above, there is evidence that the claimant had earned 98 credit hours at Brooklyn College. Pace University would accept only 70 of these hours for credit. Thus, the award for training at Pace required the sacrifice of 28 credit hours, almost a year of academic work. This would mean the additional expense of 28 hours of tuition plus maintenance expenses and costs for the claimant for a year. Considering all of the factors involved, we deem that the terms of the award for rehabilitation were contrary to the manifest weight of the evidence.

The contention of Hunter that the Commission's award for temporary total disability payments for a period of 82 4/7 weeks is contrary to the manifest weight of the

evidence is not well founded. Hunter argues, first, that it should be granted an abatement of 24 weeks, as the claimant received unemployment compensation for that period of time, and, second, that at the time of the Commission's review the claimant's condition had reached permanency and, therefore, there should not have been any extension of temporary total disability benefits.

The claimant, to support the Commission's decision as to temporary disability compensation, cites *Crow's Hybrid Corn Co. v. Industrial Com.* (1978), 72 Ill. 2d 168. A question raised there was whether an employer was required to pay temporary total compensation during a period in which the claimant was also receiving unemployment compensation. At issue was the interpretation to be given section 606 of the Unemployment Compensation Act, which provided:

"An individual shall be ineligible for benefits for any week with respect to which he is receiving or has received remuneration in the form of compensation for temporary disability under the Workmen's Compensation Act of this State, or under a workmen's compensation law of any other State or of the United States. If such remuneration is less than the benefits which would otherwise be due under this Act, he shall be entitled to receive for such week, if otherwise eligible, benefits reduced by the amount of such remuneration." Ill. Rev. Stat. 1971, ch. 48, par. 436.

This court held that "[t]he import of the statute is that the unemployment compensation, to the extent that claimant is eligible for it, will be reduced *by* the amount of *the disability benefits*—not that the *disability benefits will be reduced* or not paid at all." (Emphasis in original.) 72 Ill. 2d 168, 178.

The respondent attempts to distinguish the case here arguing that the claimant's benefits were awarded as maintenance costs and not as temporary total disability payments. The Commission's order does not support the contention. It clearly shows that the claimant was awarded 82 4/7

weeks of temporary total disability. The arbitrator had awarded 52 4/7 weeks, and the Commission extended this by the interval between the arbitrator's decision and the review by the Commission.

Hunter's second argument that the extension of temporary total compensation to 82 4/7 weeks was contrary to the manifest weight of the evidence because the claimant's condition had reached permanency also does not convince. Until the claimant has completed a prescribed rehabilitation program, the issue of the extent of permanent disability cannot be determined.

We consider that the circuit court acted correctly in confirming the Commission's decision that the claimant had sustained an injury compensable under the Act, that vocational rehabilitation training was necessary, and that he was entitled to 82 4/7 weeks of temporary total disability benefits. We, however, reverse that portion of the judgment which confirmed the award for vocational rehabilitation. That portion of the Commission's finding and award is set aside. The cause is remanded to the Commission for rehearing on the question of a vocational rehabilitation award.

*Affirmed in part and reversed*
*in part and remanded,*
*with directions.*