JOHN B. MADONNA II, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Cyclops Welding and Manufacturing Company, Appellee). Third District (Industrial Commission Division) No. 3—87—0533WC

Opinion filed June 21, 1988.

Mark A. Schindler, of Law Offices of Peter F. Ferracuti, P.C., of Ottawa, for appellant.

Oscar Chiappori, of Oscar Chiappori & Associates, and Sidney Z. Karasik and Mary Ellen Dienes, all of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Petitioner John B. Madonna sought benefits for rehabilitative training under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.8) following a work-related eye injury. An arbitrator awarded $170.50 for 53 weeks as temporary total disability benefits, and $170.50 for an additional 150 weeks as benefits for the permanent and total loss of the use of one eye. The arbitrator awarded no rehabilitation benefits. The Industrial Commission (Commission) affirmed that decision, finding that the employer, Cyclops Welding and Manufacturing Company, was not responsible for voca-

tional rehabilitation or retraining under the Act. The circuit court of La Salle County confirmed the Commission's decision. Petitioner appeals the denial of vocational rehabilitation benefits.

On July 29, 1983, petitioner suffered an eye injury at work, which resulted in the complete loss of vision in his left eye. He returned to work as a general laborer and apprentice helper on August 14, 1984. Petitioner returned to the same duties following the accident. These duties included welding. He experienced some headaches while welding.

Petitioner testified regarding several accidents which occurred after he returned to work. In one incident he turned to his blind side and a piece of iron struck him in the nose. In another incident his lack of depth perception caused him to walk into a steel rod protruding from the back of a truck, and the rod struck him in the chest. At a later time, petitioner held an angle iron while a co-worker, standing on petitioner's blind side, was drilling. Petitioner moved slightly to get a better hold on the angle and bumped the co-worker in the head with the angle. In addition, petitioner used a grinder and, turning to his blind side, petitioner bumped into a co-worker, and the grinder cut the sleeve on the co-worker's shirt. Petitioner testified further that prior to his disability he was able to pass a certification test for welding, but he failed the test following the accident.

Petitioner testified that he took an algebra course at a junior college and received a grade of "A." He could not specify any type of occupation he contemplated learning. "Well, most of the technical field nowadays, the math is a big part of it, and I figured I couldn't go wrong by taking math. *** Some type of engineering would be interesting." Petitioner testified further that he had rejected no assignments at work and was working overtime.

Robert A. Ackerman, a co-worker, testified for petitioner that he believed working on petitioner's blind side was dangerous. His shirt sleeve was ripped in one accident, and his forehead had been bumped with an angle in another incident. Ackerman, also a general laborer, believed the quality of petitioner's work had lessened after the eye injury. On cross-examination, Ackerman testified that it is not uncommon for accidents to occur on construction jobs, whether or not workers had visual problems.

Francis Whitney, a rehabilitation counselor, testified for petitioner that he had interviewed petitioner. He believed petitioner was at risk because welding and grinding were the two top jobs involving eye injuries, according to a United States Department of Labor survey of 100 jobs. Whitney advised petitioner to go to the local junior college

and "check into the robotics area to get some information on that." His reason for advising petitioner to go into robotics was because it would involve less risk of eye injury and because petitioner already had a background in working with metal.

The Illinois Department of Rehabilitation Services case folder memorandum notes were introduced into evidence. On September 25, 1984, petitioner was told he would not be financially eligible for training through their program, but he would be able to receive vocational testing. October 1, 1984, letters to Dr. Libby K. Kristal, an ophthalmologist who treated petitioner, and Dr. Carl Fetkenhour, another treating physician, requested the doctors' opinions as to "the medical advisability for a one-eyed individual to continue employment as a welder." A December 4, 1984, note remarks that petitioner was told there was little that a rehabilitation counselor could "testify about as he is non-severe." A February 11, 1985, note comments that petitioner and the counselor had "talked about lack of documentation from his doctor that he is endangering his good eye by continuing to weld." The counselor concluded: "I cannot do much else, since he is maintaining employment and satisfying his employer."

A letter dated July 27, 1984, from Dr. Fetkenhour described petitioner's medical treatment and disability. Dr. Fetkenhour stated further that petitioner could "do any work that requires vision in only one eye."

On review before the Commission, Joseph Piano, a manager for respondent, testified for respondent that petitioner worked as a general laborer and apprentice helper. He had observed petitioner working and believed the work to be average to above-average quality. Piano had not observed petitioner experience any difficulty, handicap or impairment in his job performance following his return. Since his injury, petitioner had continued to work overtime. He earned more money following his return than he did prior to the accident. Piano recalled Ackerman saying that in a "minor incident" his head was bumped when Ackerman "just turned and [petitioner] was carrying the angle iron." Piano was aware of no other incidents of this type.

The arbitrator concluded that, based on Dr. Fetkenhour's uncontradicted statements, rehabilitation was not "possible or necessary." The Commission found that, although it was probably in petitioner's best interest to be trained for a new occupation posing less risk of eye injury, it would not find the employer responsible for such rehabilitation costs here. Vocational rehabilitation benefits were not appropriate "where, as here, an injured employee can and does return to his pre-accident occupation and earnings."

�annotation An employer shall compensate an injured employee for training necessary for his vocational rehabilitation. (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a).) Generally, to show such training is "necessary," the employee must show the injury caused a reduction in his earning power and evidence that rehabilitation will increase his earning capacity. (*National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 454 N.E.2d 672; *Howlett's Tree Service v. Industrial Comm'n* (1987), 160 Ill. App. 3d 190, 513 N.E.2d 82.) In the present case, petitioner has failed to show either element.

Petitioner returned to his position as a general laborer and apprentice helper. He resumed all of the same duties. He worked overtime and has missed no work following a brief period when he missed some time because of eye strain and headaches. Petitioner earned a higher rate of pay following his return to work. Piano testified that the quality of petitioner's work ranged from average to above average. Piano observed no difficulties which impaired petitioner's working abilities following the accident. Petitioner points to his failure to pass a certification test. Piano, however, testified that no testing to weld at Foster Grant on reactors had taken place. Respondent never worked on nuclear reactors at any nuclear facility.

In addition, while petitioner argues that welding is a high risk job for eye injuries, he did not describe himself as a welder "I have had a lot of titles." Piano testified that petitioner was a general laborer and apprentice helper. Moreover, petitioner testified that, while he did less welding than he might otherwise have done, he had not rejected any jobs from respondent.

Petitioner's reliance on *C. D. Turner & Sons, Inc. v. Industrial Comm'n* (1983), 96 Ill. 2d 231, 449 N.E.2d 836, is misplaced. In that case, medical evidence indicated the worker should change to a more sedentary occupation. No such medical evidence was presented here. Dr. Fetkenhour wrote that petitioner could "do any work that requires vision in only one eye." Piano testified that petitioner successfully performed his job with vision in only one eye.

Petitioner argues that he has not been able to return to work "safely." With one exception, the incidents petitioner cites do not involve operating machinery. The bumping type of accidents which occurred could occur anywhere to someone with vision in only one eye and were not unique to his work. Moreover, these incidents have decreased drastically since petitioner first returned to work. None of them were reported or required medical attention. Piano testified that he was only aware of one accident involving Ackerman. Ackerman remarked to Piano that he, not petitioner, turned and bumped into peti-

tioner. The Commission was entitled to find that the occurrence of these incidents did not mandate a finding that rehabilitation was necessary.

Furthermore, petitioner failed to show that the rehabilitative training proposed is appropriate. No retraining proposal was presented to the Commission. Petitioner merely said that "some type of engineering would be interesting." Whitney was vague about the robotics program. He only advised petitioner to "check into the robotics area." The case notes indicate that the disability or need for rehabilitation was classified as "non-severe." Petitioner's physicians did not provide the Department of Rehabilitation Services with the requested opinions as to the medical advisability of an individual with sight in one eye to continue in petitioner's position. The notes highlight the fact that little could be done because petitioner was "maintaining employment and satisfying his employer."

Moreover, no evidence was presented regarding the nature of the training program or its cost, or a description of the field itself. No evidence was presented regarding the job market in robotics, the availability of positions, and petitioner's qualifications or aptitude for the field. Thus, petitioner failed to prove that retraining in robotics would increase his earning capacity. See *Hunter Corp. v. Industrial Comm'n* (1981), 86 Ill. 2d 489, 427 N.E.2d 1247.

For the foregoing reasons, the judgment of the circuit court of La Salle County confirming the Industrial Commission's decision is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH and CALVO, JJ., concur.