(No. 57745.—

NATIONAL TEA COMPANY, Appellant, v. THE INDUS-TRIAL COMMISSION *et al.* (Joseph M. McFalls, Appellee).

*Opinion filed September 23, 1983.*

Robert W. Scott, of Swain, Johnson & Gard, of Peoria, for appellant.

Westervelt, Johnson, Nicoll & Keller, of Peoria (Robert D. Jackson and Jeffrey W. Jackson, of counsel), for appellee.

JUSTICE MORAN delivered the opinion of the court:

Claimant, Joseph McFalls, sought workmen's compensation for an injury which he sustained while in the employ of the respondent, National Tea Company. An arbitrator awarded claimant compensation for temporary

total disability and permanent partial disability to the extent of 8% of the man as a whole. On review, the Industrial Commission found that claimant's condition was still temporary and reversed the arbitrator's award for permanent partial disability. The Commission also determined that claimant was entitled to vocational rehabilitation and remanded the cause to the arbitrator to consider an "appropriate" rehabilitation program. The circuit court of Peoria County confirmed the decision of the Commission, and respondent brought a direct appeal to this court. 73 Ill. 2d R. 302(a).

The issue presented is whether the Commission's determination that claimant is entitled to vocational rehabilitation is contrary to the manifest weight of the evidence. A related question concerns the procedure by which the Commission determines whether, and to what extent, rehabilitation is necessary.

The claimant was the only witness to testify at the hearing before the arbitrator. He stated that, on July 14, 1978, he was employed by respondent as a meatcutter. On that date, he slipped while unloading a meat truck and experienced pain and discomfort in his lower back. Claimant consulted Dr. Edward Smith, an orthopedic surgeon. After administering conservative treatment, he performed a lumbar laminectomy upon claimant in October of 1978.

Subsequent to the surgery claimant returned to his employment with respondent, but was unable to continue work because of his back condition. Pursuant to Dr. Smith's recommendation, he sought other employment and obtained a managerial position at an Aamco transmission shop. His duties entailed test-driving cars and writing repair estimates. At the time of the hearing before the arbitrator, he was employed in the same position at a different Aamco shop.

Claimant further testified that he continues to experi-

ence back pain and is unable to perform activities which require *heavy* lifting or bending. However, he stated that he feels "pretty good if I am lifting up and down all the time. But, if I have to stand for a long period of time my left leg gets numb."

During cross-examination, claimant indicated that he has not consulted Dr. Smith for several months. He relieves the pain associated with his back condition by taking aspirin and doing certain prescribed exercises.

Claimant also introduced into evidence two letters written by Dr. Smith. The first letter, dated November 21, 1978, stated that claimant suffered from a lumbosacral strain, and that the length of his disability was undetermined. Claimant was placed on a bending restriction and a 15-pound lifting restriction. In Dr. Smith's opinion, he would be unable to continue work as a meatcutter due to his back condition.

In the second letter, dated September 15, 1980, Dr. Smith stated claimant's condition was improved, but he still could not perform activities requiring heavy lifting or excessive bending. He further indicated that claimant has "some small permanent disability" and that there is evidence of a degenerative disc disease in his lower spine. He did not believe claimant would require further medical treatment as long as he obtained employment which did not strain his lower back.

Another letter written by Dr. Smith, dated July 31, 1979, was introduced into evidence by respondent. It was stated therein that "a bizarre element of emotional overlay was entering the picture," implying that part of claimant's problem was psychological. Dr. Smith also noted that the ankle jerk on claimant's left side was depressed, and that there was a spasm in the lumbosacral region of his spine. In his opinion, claimant was both physically and emotionally unable to return to his previous employment and should seek vocational

rehabilitation.

Respondent also introduced into evidence two letters written by Dr. John Henderson, a neurosurgeon, dated October 9, 1979, and July 1, 1980. Dr. Henderson indicated that claimant's "complaints are certainly not anatomical in nature," and he found no objective symptoms to support the complaints.

Claimant again testified on his own behalf at the hearing before the Commission. He stated that he had been employed by Aamco until January 30, 1981, at which time he was laid off. Other individuals in the same position as he were not laid off. During February and April of that year, his attorney wrote letters to respondent inquiring as to the possibility of employment, and requesting rehabilitation. Respondent did not offer claimant a job and did not contact him concerning the possibility of rehabilitation.

Claimant further stated that he made numerous attempts to secure other employment but was unsuccessful. Some of the job applications which he was required to complete requested information concerning his medical history. He also underwent a college aptitude test. The individuals who administered the exam recommended that claimant study business management or computers.

The Commission subsequently held a second hearing for the purpose of determining whether claimant was entitled to vocational rehabilitation. James Ragains, a rehabilitation counselor with the Institute of Physical Medicine and Rehabilitation, testified on behalf of the claimant. He stated that he interviewed claimant in December of 1980 and administered to him a number of academic achievement, personality, and interest tests. The test results indicated that claimant had a low average I.Q., was depressed, and experienced difficulty "being goal-oriented."

Ragains further testified that he was unaware of any job claimant could obtain, without training, in which he

would be compensated at a rate similar to his pre-injury earnings. On the basis of the testing, and his counseling experience, Ragains opined that claimant should receive vocational rehabilitation and participate in a remedial training program. Ragains stated that he would aid claimant in seeking employment, and would concentrate on business administration or marketing positions in the meat-cutting business. During cross-examination, the witness stated that it would be difficult for a person of claimant's age, and with his back condition, to obtain any employment except as an unskilled worker.

Claimant testified that his physical condition has not improved. He experiences pain in his back and numbness in his legs and hands. He expressed an interest in participating in a rehabilitation program. During cross-examination claimant stated that he was not currently receiving medical treatment for his condition.

Respondent does not dispute that claimant sustained a compensable injury or that he is now incapable of working as a meatcutter. Rather, it is argued that he is not entitled to vocational rehabilitation because he could, and did, obtain other employment. Respondent contends that claimant was laid off from Aamco as a result of general economic conditions, and for that reason he did not obtain the other jobs for which he applied.

There is no evidence that claimant lost his position at Aamco as a result of a depressed economy. That economic conditions precluded him from obtaining other employment is simply a conceivable inference. It is at least as probable that claimant's age, training and medical condition accounted for his unsuccessful attempts to secure employment.

Claimant is approximately 42 years old, has a low average intelligence, and has worked as a meatcutter for 20 years. As previously related, Dr. Smith stated in his letter that claimant should not perform activities which would

cause stress to his lower back, and he should not resume employment as a meatcutter. Claimant's uncontradicted testimony indicates that he diligently, but unsuccessfully, sought alternate employment. Both Dr. Smith and Ragains determined that claimant should receive vocational rehabilitation. In contrast, respondent failed to produce any evidence that vocational rehabilitation is unnecessary. Under these circumstances, the Commission's finding that claimant could not obtain suitable employment, and is therefore eligible for rehabilitation, was not contrary to the manifest weight of the evidence. See *C. D. Turner & Sons, Inc. v. Industrial Com.* (1983), 96 Ill. 2d 231; *McLean Trucking Co. v. Industrial Com.* (1983), 96 Ill. 2d 213; *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489.

We recognize, as respondent points out, there was evidence that claimant's condition was partially psychological in nature. However, "the possibility of psychiatric or emotional implications [will] not affect an award for disability resulting from physical injuries." (*Allis Chalmers Manufacturing Co. v. Industrial Com.* (1974), 57 Ill. 2d 257, 263; *cf. Kropp Forge Co. v. Industrial Com.* (1981), 85 Ill. 2d 226 (wherein claimant was deemed entitled to disability benefits and rehabilitational though his inability to perform light-duty work was primarily stress-related).) Further, the Commission was not required to adopt Dr. Henderson's apparent diagnosis that claimant's condition is completely psychological. See, *e.g., Vestal v. Industrial Com.* (1981), 84 Ill. 2d 469 (it is the Commission's province to resolve conflicts in medical evidence).

Respondent briefly contends that the Commission erred in extending claimant's temporary total compensation because his condition has reached permanency. This argument is not persuasive. "Until the claimant has completed a prescribed rehabilitation program, the issue of the extent of permanent disability cannot be determined."

*Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489, 501; *cf. McLean Trucking Co. v. Industrial Com.* (1983), 96 Ill. 2d 213, 220 (a claimant may be awarded the costs of rehabilitative training prior to a ruling on the permanency of his disability).

The Commission, as in other cases where the claimant was deemed "vocationally handicapped," remanded the cause to the arbitrator to determine an appropriate rehabilitation program. We have noted in the past that section 8(a) of the Workmen's Compensation Act merely provides, in relevant part, that an injured employee be afforded all "treatment, instruction and training necessary for *** vocational rehabilitation ***." (Ill. Rev. Stat. 1977, ch. 48, par. 138.8(a).) The legislature has failed to set forth any procedures or standards to aid the Commission in determining the extent to which rehabilitation is "necessary." In view of the frequency with which this issue arises, it seems evident that some flexible guidelines should be established. A step in that direction was taken by the Commission when it adopted a rehabilitation rule. (See Gianforte, Industrial Rehabilitation In Illinois—An Evolving Process, 71 Ill. B.J. 668 (1983).) The rule reads:

> "The employer or his representative in consultation with the injured employee and if represented with the employee's representative, shall prepare a written assessment of the course of medical care, and, if appropriate, rehabilitation required to return the injured worker to employment: (1) when it can be reasonably determined that the injured worker will as a result of the injury be unable to resume the regular duties in which he was engaged at the time of the injury, or (2) when the period of total incapacity for work exceeds 120 continuous days, whichever comes first."

However, this rule appears to handle only situations in which the employer and employee agree to a course of rehabilitation.

In *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489,

this court noted that a number of States, by statute, require employees seeking rehabilitation to be evaluated by State medical personnel or by a rehabilitation agency. The examiner then recommends whether, and what form of, rehabilitation assistance is necessary. (See 86 Ill. 2d 489, 498, and statutes cited therein.) This procedure, which to a certain extent was followed in the instant case, could prove invaluable in assessing the feasibility of a program in which the claimant wishes to participate. It will also alleviate the concerns that rehabilitation costs will be "routinely" awarded (*Zenith Co. v. Industrial Com.* (1982), 91 Ill. 2d 278, 288), or based solely upon the claimant's wishes. See *Hunter Corp. v. Industrial Com.* (1981), 86 Ill. 2d 489, 499.

Courts in other jurisdictions have set forth certain factors to consider in determining the reasonableness of a rehabilitation award. Generally, a claimant has been deemed entitled to rehabilitation where he sustained an injury which caused a reduction in earning power and there is evidence rehabilitation will increase his earning capacity. (*E.g., Sidel v. Travelers Insurance Co.* (1980), 205 Neb. 541, 288 N.W.2d 482.) Related factors concern a claimant's potential loss of job security due to a compensable injury (see *Aldrich v. Cianbro Corp.* (Me. 1978), 387 A.2d 744), and the likelihood that he will be able to obtain employment upon completion of his training. (*Lancaster v. Cooper Industries* (Me. 1978), 387 A.2d 5.) In contrast, rehabilitation awards have been deemed inappropriate where the claimant unsuccessfully underwent similar treatment in the past (*Wilson v. Lewis* (W. Va. 1980), 273 S.E.2d 96); where he received training under a prior rehabilitation program which would enable him to resume employment (*Leaton v. State Accident Insurance Fund* (1976), 27 Or. App. 669, 556 P.2d 1375); where he is not "trainable" due to age, education, training and occupation (*J. S. Walton & Co. v. Reeves* (Ala. Civ. App. 1981), 396 So. 2d 699); and where claimant has sufficient skills to obtain employment without further training or education

(*Saunders v. State Accident Insurance Fund* (1979), 40 Or. App. 169, 596 P.2d 1316).

Other factors which we consider appropriate are "the relative costs and benefits to be derived from the program, the employee's work-life expectancy, and his ability and motivation to undertake the program, [and] his prospects for recovering work capacity through medical rehabilitation or other means." (*Lancaster v. Cooper Industries* (Me. 1978), 387 A.2d 5, 9.) Whether a rehabilitation program should be designed to restore claimant to his pre-injury earning capacity depends upon the particular circumstances. However, as this court suggested in *Hunter*, such a standard should not be inflexibly applied.

We do not mean to imply, by the foregoing discussion, that the Commission should consider only the interests of the employee in determining an appropriate rehabilitation program. Because the employer is required to "underwrite" the expenses attendant to rehabilitation, it is essential that any program selected be reasonable and realistic. Consequently, where rehabilitation is ordered, the Commission should establish boundaries which reasonably confine the employer's responsibility.

For the above-stated reasons, the judgment of the circuit court of Peoria County is affirmed, and the cause is remanded to the Commission for further proceedings consistent with this opinion.

*Judgment affirmed;*
*cause remanded.*