PHILLIPS GETSCHOW COMPANY, Appellant, v. THE INDUSTRIAL COM-
MISSION *et al.* (Donald Blockman, Appellee).

Third District (Industrial Commission Division)   No. 3—87—0816WC

Opinion filed July 29, 1988.

Andra K. Heller and William N. Krucks, both of Freeborn & Peters, of Chicago, for appellant.

Neal Strom, of Strom & Kominsky, Ltd., and Michael W. Rathsack, both of Chicago, for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

The Industrial Commission found that claimant, Donald Bockman, was temporarily totally disabled as the result of a low back injury sustained while employed by respondent, Phillips Getschow Company, and awarded him compensation and benefits and all necessary medical expenses. Respondent appealed to the circuit court of Will County and the court confirmed the award of the Commission but modified the decision to allow for vocational rehabilitation and additional medical care. On appeal, respondent contends that the trial court exceeded its authority by including rehabilitation and additional medical care, and further contends that the decision on the question of temporary total disability was against the manifest weight of the evidence. Respondent also contends that it was denied its statutory right to present additional testimony before the Commission due to a conflict between the rules of the Commission and section 19(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e)).

Claimant was employed by respondent as a pipe fitter since 1970. On April 26, 1984, he fell and injured his back at work. There is no dispute that the accident arose out of and in the course of claimant's employment. Claimant was treated by Dr. Schmitz. On July 31, 1984, and again on September 4, 1985, Dr. Schmitz performed surgery for bilateral L4-L5 laminotomies, and a laminectomy and foraminotomy. Claimant was instructed to wear a lumbosacral corset whenever he was not resting. In June 1985, claimant was still disabled and was referred to Dr. Michael Kornblatt.

Respondent paid weekly disability compensation to claimant from the time of the injury until July 6, 1986. On August 6, 1986, claimant filed an application for adjustment of claim, pursuant to section 19(b—1) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b—1)), alleging that he remained disabled. The arbitrator received the following evidence.

Claimant introduced extensive medical records documenting his treatment since the time of the injury. In a report of June 24, 1986, Dr. Kornblatt stated that claimant was suffering from persistent and disabling left radicular leg and low back pain. Dr. Kornblatt hospitalized claimant in June 1986 for a myelogram and CT scan. These revealed mild L4-5 foraminal narrowing, post-operative changes at the L4-5 level and L4-5 spinal stenosis on the left side. Claimant was advised to walk as much as tolerated, but to do no heavy lifting, bending, pushing or climbing. In another report in August, Dr. Kornblatt stated that claimant responded temporarily to an epidural steroid injection. However, his incapacitating back pain persisted. Dr. Kornblatt instructed claimant to wear a brace and stated that if the brace relieved the back pain by 25% to 40%, claimant would be a good candidate for a posterior spine fusion and a wide lumbar decompression at L4-5 and L5-S1. As of the time of arbitration in September 1986, claimant was still being treated by Drs. Schmitz and Kornblatt and had not been released to return to his former job.

Claimant had extensive improvements made on his house in 1985. Gordon Kingman, the brother of claimant's neighbor Peggy Johnson, testified for respondent that he saw claimant physically performing some of the work around his house. Kingman observed claimant leveling cement, applying siding from a scaffold, and sawing wood. Kingman further testified that when the Johnsons moved into a new house, claimant helped out with various cleaning and remodeling jobs. Kingman observed claimant tearing down wooden doors, patching holes in walls, replacing light fixtures, painting, and laying carpet.

In February 1986, Kingman contacted a claims adjuster for respondent for the purpose of informing him that claimant was working on his house while simultaneously drawing compensation benefits. Kingman testified that he was motivated by his concern that Commonwealth Edison customers like himself were ultimately paying for claimant's disability. Kingman later had an altercation with claimant where Kingman threatened to contact respondent again and claimant threatened to kill Kingman if he followed through. The following week, Kingman volunteered to respondent to testify against claimant. Kingman testified that he received further threats from claimant and

received telephone threats the night before the arbitrator's hearing.

Respondent also called Mary Jane Anderson, Kingman's niece. She testified that she observed claimant at the Johnsons' new house, where he carried boxes, did painting and patching of walls.

Claimant testified that he did not do any of the renovation work at his house himself. The work was done by various friends and neighbors, and he had not performed any physical labor since the date of the accident. Claimant admitted he was present when the Johnsons moved into their new house. He testified, however, that he stood around and watched the others do the work.

Claimant further testified that in an attempt to get his neighbor, Jay Johnson, a job, claimant accompanied him to the Coachlight Apartments, where they were both hired to perform odd jobs. Claimant testified that his job entailed nothing more than supervising and instructing Johnson on how to repair faucets and washing machines. Checks from Coachlight issued to claimant were in error. He testified that they should have been payable to Johnson and that he turned all the money over to Johnson.

Claimant called six witnesses to rebut the testimony of Kingman. Peggy Johnson testified that she never saw claimant do any work either at his house or at her new house. Several people who performed work at claimant's house testified that claimant did not do any of the work himself. A concrete contractor testified that his crew completed a garage addition, steps, and a sidewalk at claimant's house and claimant did not participate in any of this work.

The arbitrator found that claimant remained temporarily totally disabled from the date of the accident to the date of the hearing. Thus, he was awarded further temporary benefits for an additional 13 weeks. The Commission affirmed the arbitrator, increasing the amount of claimant's medical expenses. The trial court confirmed the finding of disability and medical expenses and further found that claimant was in need of vocational rehabilitation.

■ Respondent's first contention on appeal is that the trial court exceeded its authority by finding that claimant was entitled to vocational rehabilitation and continuing medical care. Under section 8(a) of the Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a)), only necessary vocational rehabilitation expenses are to be awarded. A claimant is generally entitled to rehabilitation expenses if he sustains an injury which causes a reduction in earning power and there is evidence that rehabilitation will increase his earning capacity. (*National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 454 N.E.2d 672.) Courts have relied on a variety of factors in determining whether to award reha-

bilitation expenses, including a claimant's potential loss of job security due to a compensable injury and the likelihood that he will be able to obtain employment upon completion of his training. (*National Tea Co.*, 97 Ill. 2d 424, 454 N.E.2d 672.) Other factors are the costs and benefits to be derived from the rehabilitation program, the employee's work-life expectancy, his ability and motivation to undertake the program and his prospects for recovering work capacity through medical rehabilitation or other means. *National Tea Co.*, 97 Ill. 2d 424, 454 N.E.2d 672.

■ In the present case, the record contains no evidence regarding the above factors. Neither the arbitrator nor the Commission made a finding regarding vocational rehabilitation, nor did claimant offer any such evidence. Yet, the trial court modified the Commission's decision by finding that claimant is in need of vocational rehabilitation services. Under these circumstances, we find that it was error for the trial court to grant rehabilitation expenses. A circuit court reviewing a decision of the Commission must consider the case solely on the record made before the Commission. (*Gotter v. Industrial Comm'n* (1987), 152 Ill. App. 3d 822, 504 N.E.2d 1277.) Had the Commission made a finding regarding rehabilitation based on evidence contained in the record, that finding would have been subject to review by the trial court based on the manifest weight of the evidence. In the present case, however, there was neither a finding by the Commission nor evidence to support the conclusion of the trial court. For these reasons, we vacate that portion of the trial court's decision awarding expenses for vocational rehabilitation.

■ Respondent next contends that the decision of the Commission finding that claimant is still temporarily totally disabled is against the manifest weight of the evidence. A finding that a claimant is entitled to compensation for temporary total disability generally is a question of fact, and the reviewing court will only disturb the findings of the Commission if contrary to the manifest weight of the evidence. (*United States Steel Corp. v. Industrial Comm'n* (1985), 133 Ill. App. 3d 811, 478 N.E.2d 1108.) It is the province of the Commission to resolve disputed questions of fact, resolve conflicts in the evidence, and draw reasonable inferences from the evidence. (*Board of Education v. Industrial Comm'n* (1983), 96 Ill. 2d 239, 449 N.E.2d 839.) The Commission shall determine the credibility of the witnesses. *Archer Daniels Midland Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 210, 437 N.E.2d 609.

■ In the present case, the parties presented conflicting evidence regarding whether claimant was able to work during the period he

was receiving benefits. Respondent provided evidence that claimant was observed making substantial improvements around his house and helping his neighbors move into and make improvements on their house. Claimant testified, however, that he did not perform any physical labor and simply supervised the work that was being done. Six witnesses corroborated his testimony. An independent contractor testified that he performed and was paid for much of the work that respondent's witnesses claimed to have seen claimant perform. Further, claimant introduced into evidence an invoice showing that a carpet company had installed the carpet in the Johnsons' home, contrary to the testimony of respondent's witness.

Respondent also presented evidence that claimant was hired and paid by Coachlight Apartments to do various odd jobs. Claimant testified however, that he was hired in a supervisory capacity and only coached Jay Johnson as he performed the jobs. Claimant testified that although he was paid by Coachlight, he turned all the money over to Johnson. The Commission had this evidence before it and was entitled to draw inferences based on its assessment of the credibility of the witnesses. The Commission found that claimant was still temporarily totally disabled, and we do not believe that the decision of the Commission is against the manifest weight of the evidence.

■ Finally, respondent contends that it was denied its statutory right to introduce new evidence before the Commission due to a conflict between section 19(e) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(e)), which allows the introduction of new evidence, and Commission Rule 7020.80(b)(4)(C) (50 Ill. Adm. Code 7020.80(b)(4)(C) (1986)), which provides that no hearing shall be held on review of a section 19(b—1) petition. Respondent maintains that under the authority of *Cole v. Industrial Comm'n* (1988), 166 Ill. App. 3d 486, 519 N.E.2d 1081, this case must be remanded to the Commission for the presentation of additional evidence.

We find that respondent has waived any argument regarding the conflict between the rules and the Act by failing to make an offer of proof regarding the evidence it intended to introduce or to make an argument regarding the conflict before either the Commission or the trial court. In matters involving evidence, depositions or witnesses, the failure of a party to object before the arbitrator or the Commission bars that party from raising the assertion on judicial review. *Caradco Window & Door v. Industrial Comm'n* (1981), 86 Ill. 2d 92, 427 N.E.2d 81; *District 141, International Association of Machinists & Aerospace Workers v. Industrial Comm'n* (1980), 79 Ill. 2d 544, 404 N.E.2d 787.

In the present case, respondent claims only that it would have offered additional medical evidence. We do not know what evidence respondent intended to offer. No offer of proof was made to preserve the issue for appeal. Nor does the record contain any indication that the issue of whether a conflict exists between the rule and the Act was raised either before the Commission or the trial court. In the case relied upon by respondent, *Cole v. Industrial Comm'n*, this court did find that a conflict exists between the rules and the Act. The claimant there, however, filed a motion to present additional evidence before the Commission, thus preserving the issue for review. Here, we believe that the issue has been waived and cannot be considered by this court.

For the reasons stated, the portion of the judgment of the circuit court of Will County finding that claimant is entitled to vocational rehabilitation is vacated, and the portion of the judgment finding that claimant remains temporarily totally disabled and is entitled to compensation is affirmed.

Judgment affirmed in part and vacated in part.

BARRY, P.J., and WOODWARD, McCULLOUGH, and CALVO, JJ., concur.