ROBERT SCHOON, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Rudolf Express Company, Inc., Appellee).

Third District (Industrial Commission Division)   No. 3—93—0465WC

Opinion filed March 25, 1994.

Duane J. O'Connor, of Butz, Jaffe, Collins, O'Connor & Burnett, of Kankakee, for appellant.

Ruth Stelzman, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

The employee, Robert Schoon (claimant), filed an application for adjustment of claim pursuant to the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*) for back injuries he allegedly sustained while working for Rudolf Express Company, Inc. (employer). The arbitrator found the claimant permanently totally disabled (PTD) under section 8(f) of the Act. The Industrial Commission (Commission) affirmed. The circuit court reversed and remanded with instructions. The Commission then found the claimant temporarily totally incapacitated under section 8(b) of the Act. The court ordered the employer to make payments for 125 weeks as provided under section 8(d)2 because the injuries sustained caused permanent disability to the extent of 25% of the man as a whole. The Commission also awarded medical benefits. The circuit court affirmed.

The claimant drove a truck for the employer for 28 years. He delivered and picked up freight. In the average day, the claimant physically handled 30,000 pounds. On August 19, 1982, the claimant attempted to lift a trailer that had a pallet with freight on it. The trailer slipped and the claimant fell backwards. The claimant got up and "seemed to be all right." He noticed that his right hip was stiff getting out of the truck when he returned home. He reported the incident to the dock foreman. The claimant worked the next week and then took his regularly scheduled vacation week. The claimant never went back to work.

Dr. Kline, a chiropractor, treated the claimant. The claimant's hip did not improve. Dr. Swartz then treated the claimant. The claimant went to Dr. Stoval in September 1982. He saw Dr. Stoval five or six times in 1982 and 1983. At Dr. Stoval's recommendation,

the claimant began physical therapy and began wearing a corset that the claimant still wore at the time of the arbitration hearing. The claimant completed about three months of therapy between 1982 and 1984. As of November 1984, the claimant's hip no longer hurt, but he had pain in his right leg and his lower back. He has not received treatment for his back since November 1984. The claimant also received treatment from Dr. Smit, who prescribed pain pills. At the time of the arbitration hearing, the claimant was still under the care of Dr. Smit.

At the insurance company's request, the claimant saw Dr. Thompson five times and Dr. Kane once. Dr. Thompson ordered therapy. The claimant continued with Dr. Stoval's therapy also.

In the summer of 1986, Dr. Sergeant opined that claimant had suffered a stroke. He never received treatment for the stroke.

The claimant did not look for work of any nature. Judy Sher, a rehabilitation manager, set up interviews for the claimant but he did not go because the interviews were out of town.

The claimant has no prior back injuries. He has an eighth-grade education. He was in the military for four years and then began working for the employer when he was 24 years old. The claimant was 52 years old at the time of the accident. Prior work involved construction, cement finishing, and carpentry.

The claimant currently suffers from impotency. He continues to suffer back pain and "problems" because of the stroke. The claimant did not specify those "problems."

The claimant raises three issues on appeal: (1) whether the Commission's decision finding the claimant permanently and totally disabled was against the manifest weight of the evidence; (2) whether rehabilitation is a condition precedent to employment; and (3) whether the decision of the Commission on remand was against the manifest weight of the evidence.

The claimant first contends that the circuit court erred when it reversed the Commission's decision finding the claimant permanently and totally disabled.

In *Dexheimer v. Industrial Comm'n* (1990), 202 Ill. App. 3d 437, 442-43, 559 N.E.2d 1034, the court stated:

"It is the province of the Commission to weigh and resolve conflicts in testimony, including medical testimony, and to choose among conflicting inferences therefrom. [Citations.] It is only when the decision of the Commission is without substantial foundation in the evidence or its finding is manifestly against the weight of the evidence that the findings of the Commission should be set aside."

(See also *O'Dette v. Industrial Comm'n* (1980), 79 Ill. 2d 249, 253, 403 N.E.2d 221.) "A reviewing court cannot reject or disregard permissible inferences drawn by the Commission because different or conflicting inferences may also be drawn from the same facts nor can it substitute its judgment for that of the Commission unless the Commission's findings are against the manifest weight of the evidence." (*Martin v. Industrial Comm'n* (1992), 227 Ill. App. 3d 217, 219, 591 N.E.2d 108.) This court observes that "[t]he manifest weight of the evidence is that which is 'the clearly evident, plain and indisputable weight of the evidence.' [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." (*Drogos v. Village of Bensenville* (1981), 100 Ill. App. 3d 48, 53, 426 N.E.2d 1276.) Finally, "[i]f the undisputed facts permit an inference either way *** then the Commission alone is empowered to draw the inference and its decision as to the weight of the evidence will not be disturbed on review." *Morgan Cab Co. v. Industrial Comm'n* (1975), 60 Ill. 2d 92, 97, 324 N.E.2d 425.

The determination of the extent or permanence of a claimant's disability is a question of fact for the Commission to determine, and its decision will not be set aside unless it is against the manifest weight of the evidence. (*Hutson v. Industrial Comm'n* (1992), 223 Ill. App. 3d 706, 714, 585 N.E.2d 1208.) In *Marathon Oil Co. v. Industrial Comm'n* (1990), 203 Ill. App. 3d 809, 815, 561 N.E.2d 141, the court observed:

"[a]n employee is totally and permanently disabled under workers' compensation law where he is unable to make some contribution to industry sufficient to justify payment of wages to him. [Citation.] He must show that he is, for practical purposes, unemployable. [Citation.] A person need not be reduced to a state of total physical helplessness, but is totally disabled when he cannot perform services except those that are so limited in quantity, dependability or quality that there is no reasonably stable market for them."

Conversely, "if an employee is qualified for and capable of obtaining gainful employment without seriously endangering his health or life, such employee is not totally and permanently disabled." *E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, 361-62, 376 N.E.2d 206.

The claimant has the burden of proving the extent and permanence of his injury by a preponderance of evidence. (*Esposito v. Industrial Comm'n* (1989), 186 Ill. App. 3d 728, 737, 542 N.E.2d 843.) "[I]f the claimant's disability is limited in nature so that he is not

obviously unemployable, or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstances. However, once the employee has initially established that he falls in what has been termed the 'odd-lot' category (one who, though not altogether incapacitated for work, is so handicapped that he will not be employed regularly in any well-known branch of the labor market [citation]), then the burden shifts to the employer to show that some kind of suitable work is regularly and continuously available to the claimant [citation]." *Valley Mould & Iron Co. v. Industrial Comm'n* (1981), 84 Ill. 2d 538, 546-47, 419 N.E.2d 1159.

■ In the case *sub judice*, the claimant was not obviously unemployable and did not produce medical evidence showing he is totally disabled to do any work. Neither Dr. Stoval, Dr. Smit, nor Dr. Thompson opined in his office notes that the claimant was incapable of performing any type of work. Dr. Stoval's note dated August 25, 1983, states "that the chances of him (claimant) getting back to his job, which is truck driving, is [*sic*] very small." Later, Dr. Stoval wrote on November 26, 1984, that the claimant "should consider retirement." A note, allegedly that of Dr. Smit, dated January 4, 1984, states the claimant "may have at this point reached a plateau. *** Possibly he may return to his former occupation as a driver, but it is unlikely." Dr. Thompson's report dated February 27, 1985, states:

> "I would suggest that some attempt be made to return him to a non-driving type job, such as a dispatcher, or similar type of job where he could sit or stand as he desired to relieve his alleged back and leg discomforts."

Nor does the claimant fall into the "odd-lot" category, *i.e.*, one who, though not altogether incapacitated for work, is so disabled that he will not be employed regularly in any well-known branch of the labor market. (*Valley Mould & Iron Co.*, 84 Ill. 2d at 547.) As noted by the Commission, Dr. Thompson suggested a job where the claimant could sit or stand as he needed. The rehabilitation manager set up job interviews for the position of cab dispatcher with two taxicab companies. The claimant did not go to these interviews or any other interviews. Therefore, while the evidence supports a finding that the claimant can no longer return to driving a truck, it does not show that he cannot be regularly employed in any well-known branch of the labor market. As noted by the circuit court, even the suggestion by Dr. Stoval that the claimant should retire may mean that the claimant should consider retiring from truck driving. That is, he could not "retire" from less strenuous employment because he was not engaged in any.

Because the claimant failed to make a *prima facie* showing of "odd-lot," it was incumbent upon him to show:

> "that, considering his present condition, in light of his age, experience, training, and education, he is permanently and totally disabled within the definition stated in *Moore* \*\*\* . This burden may be met by a showing of diligent but unsuccessful attempts to find work [citation], or by proof that because of the above-mentioned qualities he is unfit to perform any but the most menial tasks for which no stable market exists." *Valley Mould*, 84 Ill. 2d at 547, citing *A.M.T.C. of Illinois, Inc. v. Industrial Comm'n* (1979), 77 Ill. 2d 482, 490, 379 N.E.2d 804.

Not only did the claimant fail to make a diligent attempt to find work, he made no attempt at all. The claimant stated that Sher, the rehabilitation manager, contacted him regarding job interviews. However, the claimant testified that he did not go to the interviews because "they were out of town," he felt still employed by the employer, and to be eligible for retirement, he only needed five more days with the employer. The claimant said that he never looked for work "of any nature."

The claimant also failed to present evidence that he was unfit to perform any but the most menial task for which no stable labor market exists. At the time of the accident, the claimant was 52 years old and had an eighth-grade education. The evidence supports the fact that he could work but chose not to work.

Although this court recognizes that the Commission's decision will not be disturbed unless it is against the manifest weight of the evidence, a finding of liability is not justified when the facts and circumstances in evidence preponderate in favor of the opposite conclusion. (*United States Steel Corp. v. Industrial Comm'n* (1956), 8 Ill. 2d 407, 411-12, 134 N.E.2d 307.) Such is the case here. There is no substantial evidence to support a finding of PTD.

Because we conclude that the Commission's decision awarding permanent total disability is against the manifest weight of the evidence, the decision of the circuit court is affirmed. It should also be noted that assuming, *arguendo*, that the claimant did make a *prima facie* showing of "odd-lot," the result would not change. The employer made every effort to show that some kind of suitable work was regularly available to the claimant. These efforts, however, failed due to the claimant's lack of cooperation.

The claimant's second contention is that rehabilitation is a condition precedent to employment. The claimant notes that although the employer directed the Copley Memorial Hospital to evaluate the claimant for rehabilitation, the claimant was never in a

rehabilitation program. Instead, the employer attempted to find a job for the claimant.

Section 8(a) of the Act provides that the employer shall pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee. Industrial Commission Rule 7110.10(a) further provides:

> "The employer or his representative, in consultation with the injured employee and, if represented, with his representative, shall prepare a written assessment of the course of medical care, and, if appropriate, rehabilitation required to return the injured worker to employment when it can be reasonably determined that the injured worker will, as a result of the injury, be unable to resume the regular duties in which he was engaged at the time of injury, or when the period of total incapacity for work exceeds 120 continuous days, whichever first occurs." 50 Ill. Adm. Code § 7110.10(a) (1993).

In *National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 432-33, 454 N.E.2d 672 (where the employer failed to assume its responsibility to rehabilitate the injured employee who could no longer perform the assigned job), the court recognized a number of factors to consider in determining whether rehabilitation is appropriate. Factors favoring rehabilitation include: (1) the employee has sustained an injury which caused a reduction in earning power and there is evidence rehabilitation will increase his earning capacity; (2) the employee is likely to lose job security due to his injury; and (3) the employee is likely to obtain employment upon completion of rehabilitation training. Factors mitigating against rehabilitation include: (1) the employee has unsuccessfully undergone similar treatment in the past; (2) the employee has received training under a prior rehabilitation program which would enable him to resume employment; (3) the employee is not "trainable" due to age, education, training and occupation; and (4) the employee has sufficient skills to obtain employment without further training or education. Other factors the court considered relevant were the relative costs and benefits to be derived from the program; the employee's work-life expectancy; his ability and motivation to undertake the program; and his prospects for recovering work capacity through medical rehabilitation or other means. *National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 432-33.

█ Upon reviewing the *National Tea Co.* case, it is apparent that rehabilitation is not a condition precedent to employment in all cases. Specifically, one factor mitigating against rehabilitation includes considering whether the claimant has sufficient skills to obtain

employment without further training or education. Moreover, the circuit court stated in its decision that the evidence showed that the claimant refused to attend interviews with two companies in Joliet because the claimant would be giving up seniority and five weeks of vacation by working at those companies, the location was at a "different local," and the claimant only needed five days to be eligible for retirement. That is, if the claimant worked five more days with the employer, he would receive an increase in the pension from the Teamster's Union. Also, the claimant did not make any claim that lack of rehabilitation was the reason for failure to attend the interviews.

"[I]t is widely accepted that '[t]he primary goal of rehabilitation is to return the injured employee to work.' [Citation.]" (*Hartlein v. Illinois Power Co.* (1992), 151 Ill. 2d 142, 165, 601 N.E.2d 720.) Simply stated, the evidence shows that the claimant did not want to return to work. Effort to rehabilitate the claimant is not logical.

■ The claimant's final contention, as we understand it, is that all of the evidence upon which the Commission originally found PTD was still before the Commission; therefore, to find less than PTD was against the manifest weight of the evidence. Although the claimant contends that the award of 25% of the man as a whole was incorrect, he does not state why this was against the manifest weight of the evidence or what the award should be.

We repeat, the evidence shows that the claimant can work but does not want to work. The claimant does not cite any cases that hold that a different standard of review applies to a case on remand. The claimant's disability was a fact question for the Commission to decide, and this court will not disturb the Commission's decision unless it is against the manifest weight of the evidence. Such is not the case *sub judice*.

Affirmed.

McCULLOUGH, P.J., and WOODWARD, SLATER, and RARICK, JJ., concur.