(No. 55083.—)

ARCHER DANIELS MIDLAND COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (David Peckham, Appellee).

*Opinion filed June 1, 1982.*

Thomas D. Nyhan, Ellis A. Ballard, and James M. O'Brien, all of Chicago (Pope, Ballard, Shepard & Fowle, Ltd., of counsel), for appellant.

Scheele, Serkland & Boyle, Ltd., of Chicago (James C. Serkland, of counsel), for appellees.

JUSTICE MORAN delivered the opinion of the court:

Plaintiff, David Peckham, filed claims under sections 7, 8(a) and 8(b) of the Workmen's Compensation Act (Act) (Ill. Rev. Stat. 1977, ch. 48, pars. 138.7, 138.8(a), (b)) arising out of a fall suffered on January 2, 1979, by his wife, Mary Peckham, on the premises of her employer, Archer Daniels Midland Company (defendant). The arbitrator found that Mary Peckham sustained accidental injuries arising out of and in the course of her employment which caused her death on January 10, 1979. She awarded plaintiff compensation in the amount of $153.62 per week for 1,627 weeks and $60.26 for one week under section

7(a) of the Act and $1,750 in burial expenses under section 7(f). The arbitrator also awarded plaintiff $146.05 for medical expenses under section 8(a) of the Act. On review, the Industrial Commission affirmed the arbitrator's decision except, in addition to the above amounts, it awarded plaintiff $109.73 in temporary total disability under section 8 and increased attorney fees to the statutory amount. The circuit court of Macon County, on appeal by defendant, found that the decision of the Industrial Commission was not against the manifest weight of the evidence and confirmed the decision in its entirety.

This case presents just one issue. Did the injury to Mary Peckham arise out of and in the course of her employment?

On January 2, 1979, at approximately 7:45 a.m., Mary Peckham (decedent) was on defendant's premises, walking from the parking lot to the meal-grind plant where she was due to begin work at 8 a.m. Peckham, whose height was five feet five inches, entered the fenced-in plant grounds through gate 4, the closest gate to the parking lot. The gate area was covered with ice and snow. Gate 4 has a 37-foot crossing arm which, in its lowered position, is three feet eight inches above the ground and blocks the major portion of the entrance area. At the end of the crossing arm there is an opening, two feet nine inches wide, through which pedestrians can pass. Posted at gate 4 was a sign restricting use of that gate to certain "contractors, their employees, their suppliers and persons having business with them." However, the record does not disclose that defendant had ever instructed its employees not to use this gate. In fact, approximately 200 or more employees used that entrance every day. There is another gate, 42 feet south, where a sign was posted which stated that this gate is for "[defendant's] employees and suppliers only, other than those designated on Gate 4."

While approaching the gate, the decedent called to a

close friend, Becky Pfeifer, requesting her to wait. At some point as she was approaching Pfeifer, who was inside the gate, decedent fell. The testimony is conflicting as to where the fall occurred. Mark Himmelrick, testifying for defendant, stated that he observed the decedent walk from the parking lot to the hinged end of the crossing arm, which was in the down position. He noted that decedent was taking short, "pokey" steps to avoid falling. He also testified that when decedent was about five or six feet outside the gate he turned away. When he looked back, decedent had fallen, about a half foot to a foot inside the crossing arm at the hinged end. He stated he was approximately 125 feet away when he observed decedent on the ground. Himmelrick related that he went to where decedent had fallen, spoke with her briefly, then, along with another man, carried decedent to the building where she worked.

Becky Pfeifer, testifying for plaintiff, stated that, after decedent called to her, she turned and waited as decedent approached. She declared that decedent took careful steps because of the ice and snow. Pfeifer related that, approximately 10 feet inside the crossing arm, decedent fell and that decedent was "standing straight" when the fall occurred. She had indicated in a prior recorded statement that decedent was about two yards inside the gate when the fall occurred. Pfeifer testified that the general nature of the ground in the area where decedent fell was slippery. She also indicated that, from the time she saw decedent until the fall, decedent walked a distance of approximately 30 to 40 feet, taking short steps, so that she covered the distance in approximately three minutes. After the fall, Pfeifer went over to decedent and spoke with her before she was carried inside.

Decedent was transported to a hospital, where it was determined that she had fractured her left ankle. A cast was applied. On January 10, 1979, while leaving home to

go to the doctor, Mary Peckham collapsed and died. An autopsy established that her death resulted from a blood clot caused by the fracture.

Defendant does not deny that the fall occurred on company premises or that the injury caused decedent's death. Defendant does contend that the injury did not arise out of and in the course of her employment. It is argued that the injury resulted from her voluntary act of going under the crossing arm, thereby assuming a risk not incidental to her employment.

This court has held, under certain circumstances, that accidental injuries sustained on the employer's premises within a reasonable time before or after work arise "in the course of" employment. (*Rogers v. Industrial Com.* (1980), 83 Ill. 2d 221, 223; *Peel v. Industrial Com.* (1977), 66 Ill. 2d 257, 260.) It has also held that not all parking lot injuries are compensable as "arising out of" employment. To be compensable, the injury must have resulted from some risk connected or incidental to the employment. (*Rogers v. Industrial Com.* (1980), 83 Ill. 2d 221, 223; *Peel v. Industrial Com.* (1977), 66 Ill. 2d 257, 260.) A personal deviation by an employee (*e.g.,* spending from 1½ to two hours in a tavern) can break the necessary causal link between the injury and the employment. (*Aaron v. Industrial Com.* (1974), 59 Ill. 2d 267.) Nor is an injury compensable if it resulted from risk personal to the employee rather than incidental to the employment. (See *Rogers v. Industrial Com.* (1980), 83 Ill. 2d 221 (claimant's automobile, being driven by his wife, malfunctioned and struck claimant); *Jones v. Industrial Com.* (1980), 78 Ill. 2d 284 (claimant closed car door on his hand); *Fisher Body Division, General Motors Corp. v. Industrial Com.* (1968), 40 Ill. 2d 514 (claimant's car battery exploded).) In these cases, the court denied recovery where the injury claimant sustained on the employer's premises did not occur as a result of the condition of

those premises. However, where the claimant's injury was sustained as a result of the condition of the employer's premises, this court has consistently approved an award of compensation. *Hiram Walker & Sons, Inc. v. Industrial Com.* (1968), 41 Ill. 2d 429; *Carr v. Industrial Com.* (1962), 26 Ill. 2d 347; *De Hoyos v. Industrial Com.* (1962), 26 Ill. 2d 110 (cases in which claimant fell in employer's ice-covered parking lot).

In the instant case, similar to *Hiram Walker, Carr* and *De Hoyos,* and unlike *Rogers, Jones* and *Fisher-Body,* the injury to decedent occurred within a reasonable time before work as a result of a fall on the employer's icy premises. Defendant posits, however, that from the time Himmelrick looked away until he saw decedent on the ground, six to 12 inches inside the crossing arm, decedent could not have walked to the end of the 37-foot arm and back to the hinged end. Based upon the above assumption, the defendant argues that the decedent voluntarily assumed an "added risk" by going under the arm.

In support of this argument, defendant relies on the testimony of Mark Himmelrick and disputes the credibility of Becky Pfeifer. Defendant points out that Pfeifer was a close friend of decedent and asserts that she was biased in decedent's favor. Defendant also relies on the inconsistencies in Pfeifer's testimony with respect both to the relative positions of decedent and herself before and at the time of the fall and to the position of the crossing arm. Defendant further points to conflicts between the testimony of Himmelrick and Pfeifer. However, it is well settled that the Industrial Commission shall determine the credibility of the witnesses and resolve disputed questions of fact. (*General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 435; *Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 174.) In this case, it was for the Commission to determine Pfeifer's credibility and to resolve any conflicts between Himmelrick's and her testi-

mony.

It is equally well settled that the Commission's finding of a causal relationship will not be reversed unless it is contrary to the manifest weight of the evidence. (*General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 435; *Interlake, Inc. v. Industrial Com.* (1981), 86 Ill. 2d 168, 175.) This principle was demonstrated in *Jewel Companies, Inc. v. Industrial Com.* (1974), 57 Ill. 2d 38, where a claimant sustained an injury while driving a motorcycle on his employer's premises. The issue was whether claimant's injury was caused by reckless conduct (driving at an excessive speed), thereby removing it from coverage under the Act, or whether it occurred as a result of a risk incident to employment. This court held that resolution of the factual question of a causal connection between the employment and the injury is within the province of the Commission. (57 Ill. 2d 38, 43.) After so holding, the court concluded that the Commission's decision was not contrary to the manifest weight of the evidence, and therefore approved the Commission's award.

Here, both witnesses testified that decedent was taking short steps. As related earlier, Himmelrick testified that decedent had fallen between a half foot and a foot inside the crossing arm at the hinged end. Pfeifer testified that decedent fell approximately 10 feet inside the arm. Neither witness observed decedent go under the crossing arm. The one witness who observed the fall testified that decedent was standing straight when the fall occurred. There was sufficient evidence for the Commission to conclude that, irrespective of whether or not decedent went under the crossing arm, she was in an erect position when the fall occurred and that the injury resulted from a risk incident to employment. The Commission's decision that decedent's injury arose out of and in the course of employment is not contrary to the manifest weight of the evidence.

218

Accordingly, the judgment of the circuit court of Macon County is affirmed.

*Judgment affirmed.*