2020 IL App (2d) 190759WC-U
No. 2-19-0759WC
Order filed April 20, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

Workers' Compensation Commission Division

| | | |
|---|---|---|
| DEBORAH SOUVENIR, | ) | Appeal from the Circuit Court |
| | ) | of Kane County, |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 19-MR-535 |
| | ) | |
| THE ILLINOIS WORKERS' | ) | |
| COMPENSATION COMMISSION *et al.* | ) | Honorable |
| | ) | Kevin T. Busch, |
| (Dovenmuehle Mortgage Co., Appellee). | ) | Judge, Presiding. |

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Hoffman, Hudson, Cavanagh, and Barberis concurred in the judgment.

ORDER

¶ 1    *Held:*  The Commission's finding that the claimant failed to prove that her accident arose out of her employment with the employer was not erroneous.

¶ 2    The claimant, Deborah Souvenir, appeals a decision of the Illinois Workers' Compensation Commission (Commission) denying her benefits under the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2016)). The Commission affirmed, adopted, and corrected the decision of the arbitrator, finding that the claimant failed to prove that her accident arose out of her employment with the employer. The claimant sought review of the Commission's decision before the circuit court of Kane County. The court confirmed the Commission's decision.

¶ 3                          BACKGROUND

¶ 4      The following factual recitation is taken from the evidence presented at the arbitration hearings conducted on March 9, 2018, and May 15, 2018, and the arbitrator's decision dated July 5, 2018. At the outset, we note that we limit our factual background to details of the accident and the employer's premises as those are the only pertinent facts to our decision in this case.

¶ 5      The claimant received an offer of employment from the employer, Dovenmuehle Mortgage Co., to work as a customer service representative at its call center. She testified that she received a letter of employment that instructed her to park in the employee parking lot. On May 8, 2017, about 7:50 a.m., she arrived at the employee parking lot to report for her first day of work. She parked to the right of a median. She parked close to the median in a way that would not allow her to walk around her car. Therefore, the claimant had to walk across the median to reach the building.

¶ 6      The claimant stated that she stepped with her left foot out of her car and onto the median. She noted that the grassy area inside the median was much lower than the curb height and she did not expect it to be uneven. With her next step, using her right foot, she tripped on the backside of the curb and fell forward onto the parking lot pavement.

¶ 7      The claimant testified that the "height of the curb" caused her to fall and that the "grassy area" was defective. She estimated that the curb was about an inch to an inch and a half taller than the ground level of the median. However, the claimant stated that she did not measure the curb and her estimate was based on looking at a picture. She stated that she informed Lisa Wilk, the employer's human resources generalist, that she fell because the curb and the grass were uneven with each other. The claimant stated that the grassy dirt area was actually lower than the curb but appeared to be level with the curb because of the height of the grass. The claimant also sent an email to Wilk detailing her accident. The claimant spent the next nine months receiving various treatments for her foot and ankle injury.

¶ 8    Wilk testified that the employer sent an offer of employment to the claimant instructing her to report for work on May 8, 2017. Wilk stated that the claimant did not mention anything defective about the curb or pavement when she reported her injury. Additionally, she testified that the claimant never told her anything regarding an uneven curb or grass at the time of the accident. Wilk's handwritten notes from May 8, 2017, were admitted into evidence. Wilk noted that the claimant reported she was " 'caught off guard' by the 'drive way' spot (a 'spot' next to where she parked was next to a 'drive way')." Wilk inspected the curb that day and did not find any defects. She testified that there were other open parking spaces available to the claimant. Wilk stated that employees do not have to traverse any curbs to gain entrance into the building. She stated that an employee could walk around the curb to gain entrance into the building.

¶ 9    An email from Shelli Christian, a customer service supervisor for the employer, to Wilk was also admitted into evidence. The email was dated May 8, 2017, 8:34 a.m. Christian stated:

"When I opened the door to let [the claimant] in, she advised me she fell in the parking lot. She stated to me she got out of her car and took a couple of steps and then fell. She skinned up both of her knees and stated she twisted her right ankle when she fell. She stated she doesn't know what caused her to fall."

¶ 10   George Acosta, an agent of the employer's insurance company, testified that he first learned of the accident either the day of or the day after from Wilk. Acosta testified that the claimant reported that she parked, took a step or two, and tripped over a curb. He asked the claimant if the curb had a specific condition, such as a crack or a pothole. Acosta recalled that the claimant identified the curb as "normal." Following his investigation, he denied the claim due to no defect or hazard present on the employer's premises.

¶ 11   The arbitrator found that the claimant's accident did not arise out of her employment with the employer. The arbitrator noted that the claimant's own testimony and the testimony of all other

witnesses, as well as the photographic evidence, demonstrated that there were no cracks, defects, or abnormalities in the curb. Additionally, she noted that the curb was similar to other well-maintained safety curbs that can stop or limit the area between moving vehicles and the walkways that employees take to go to work.

¶ 12     The arbitrator stated she "struggled greatly" to understand the thrust of the claimant's claim. Her understanding of the claimant's argument was that the appearance of similar height between the grass and the curb was a defect. The arbitrator rejected this argument, finding that the photographic evidence and a reasonable analysis led to a finding that there was no defect, surprise, or damage in the nature of the parking lot, grass, or curb. Additionally, she stated that grass by its very nature will "give" under feet and the height of the grass will vary due to growth or maintenance. Therefore, she stated that finding this curb and grass area as unexpected or defective would simply lend to a finding that all grassy curbed areas are inherently defective. The arbitrator largely relied on *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52 (1989).

¶ 13     The arbitrator emphasized that her conclusion was not meant as a designation of fault or negligence on behalf of the claimant. Instead, she noted that not every fall by an employee gives rise to an employer's liability. The arbitrator concluded that, to find a pavement or area defective, there needed to be an objective and discernable defect, which was not present in this case. She also stated, that while much of the trial testimony was devoted to how the claimant was a "bad" and "undependable" employee who only worked 23 days and missed about 87 days of work, her decision in this case was not based on that testimony. Thus, the arbitrator found that the claimant failed to prove that her accident arose out of her employment.

¶ 14     On May 1, 2019, the Commission affirmed, adopted, and corrected the decision of the arbitrator. In its correction, the Commission clarified the arbitrator's findings where the arbitrator

indicated in her summary that an employee-employer relationship did not exist, but her analysis and conclusion indicated that she found such relationship existed.

¶ 15    The claimant sought review of the Commission's decision before the circuit court of Kane County. On August 23, 2019, the circuit court confirmed the Commission's decision. In its written order, the court stated, "This court cannot make a finding as a matter of law there is a defect for purposes of compensability under the [Act]." The claimant appeals.

¶ 16                                 II. ANALYSIS

¶ 17    To obtain compensation under the Act, a claimant must show, by a preponderance of the evidence, that she suffered a disabling injury that arose out of and in the course of her employment. *Baggett v. Industrial Comm'n*, 201 Ill. 2d 187, 194 (2002). An injury "arises out of" one's employment if it originated from a risk connected with, or incidental to, the employment and involved a causal connection between the employment and the accidental injury. *Id.*

¶ 18    On appeal, the claimant argues that the Commission erred as a matter of law when it determined that she failed to prove that her accident arose out of her employment because she was injured on her employer's premises due to a dangerous or hazardous condition. The employer argues that the Commission's decision was not against the manifest weight of the evidence.

¶ 19    We first address the standard of review. Usually, whether the claimant proved this element is a question of fact for the Commission to resolve and that determination will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Joiner v. Industrial Comm'n*, 337 Ill. App. 3d 812, 815 (2003). However, whereas here, the facts are undisputed and susceptible to only a single inference, the question is one of law and subject to *de novo* review. *Id.*; see *Diaz v. Illinois Workers' Compensation Comm'n*, 2013 IL App (2d) 120294WC, ¶ 21 (when there is no question of inference or weight to be given to the evidence because all the Commission did was apply the law to the undisputed facts our review is *de novo*).

¶ 20    The claimant argues that the height differential between the ground level inside the median and the top of the curb to exit the median caused her injury. Specifically, she characterizes this height differential, which she estimated as an inch to an inch and a half, as a depression and an uneven surface, which she argues is a defect creating a hazardous condition. See *Dukich v. Illinois Workers' Compensation Comm'n*, 2017 IL App (2d) 160351WC, ¶ 35 (identifying that potential defects include holes, depressions, uneven surfaces, loose gravel, or puddles of rainwater). We note that the claimant does not argue that the curb itself was defective, but that the area inside of the median was defective and created a hazardous condition due to its low height. The presence of a "hazardous condition" on the employer's premises renders the risk of injury a risk incidental to employment. See *Archer Daniels Midland Co. v. Industrial Comm'n*, 91 Ill. 2d 210, 216 (1982). Accordingly, a claimant who is injured by such hazardous condition may recover benefits without having to prove that she was exposed to the risk of that hazard to a greater extent than members of the general public. *Id.*

¶ 21    The claimant's argument is akin to challenging a height differential between pavement and a curb. The fact that her case involves a median is without consequence under the facts of this case. The claimant does not argue that the median contained a hole, depression, or uneven surface. She is arguing that the entire ground level of the median is defective because it is an inch and a half lower than the top of the curb. We note that the claimant did not present any evidence during the hearings in this case or authority supporting her proposition that a curb must be level with any of the surfaces it abuts otherwise it is defective and a hazardous condition. Thus, the claimant failed to satisfy her burden. See *Bagwell v. Illinois Workers' Compensation Comm'n*, 2017 IL App (4th) 160407WC, ¶ 24 (the claimant has the burden of proving *all of the elements* of her claim by a preponderance of the evidence). On that basis alone, the Commission did not err as a matter of law when it determined that the claimant's injury did not arise out of her employment.

¶ 22    As we have determined that the claimant failed to support her position that the height differential between the top of the curb and ground level of the median was a defect, we nonetheless address whether the curb was defective in this case as it was the surface that ultimately caused her injury.

¶ 23    As the Commission found in this case, the claimant's case falls squarely within *Caterpillar*. In *Caterpillar*, the claimant was injured on his way to the employee parking lot after he completed his shift. 129 Ill. 2d at 56. In front of the employer's building was a sidewalk with a curb running along its edge. *Id.* The claimant walked along the sidewalk for about 30 feet and stepped off the curb onto the blacktop driveway. *Id.* A slight cement slope existed between the curb and the blacktop driveway, which was likely for drainage. *Id.* at 57. As the claimant stepped off of the curb, his right foot landed half on the cement incline and half on the blacktop driveway, and he twisted his ankle. *Id.* The supreme court considered whether the claimant's injury resulted from the condition of the employer's premises. *Id.* at 59. The court concluded that the claimant's injury did not result from the condition of the employer's premises because there was no evidence that the curb was either hazardous or defective. *Id.* at 61. Instead, the evidence showed that the pavement was dry, there were no holes, obstructions, or rocks on the pavement, and the claimant simply stepped off the curb and twisted his ankle. *Id.* at 60.

¶ 24    The curb in the case is similar to the curb in *Caterpillar*. The evidence demonstrated that the surfaces were dry and there were no holes, obstructions, or rocks. The claimant merely tripped on the curb as she was exiting her car. The claimant failed to present any evidence or authority suggesting that the curb was defective. To the contrary, the evidence of record demonstrated that this was a typical curb that had no defects. Thus, the Commission's determination that the claimant's injury did not arise out of her employment with the employer was not contrary to law.

¶ 25                                    III. CONCLUSION

¶ 26    For the foregoing reasons, we affirm the judgment of the circuit court of Kane County, which confirmed the Commission's decision.

¶ 27    Affirmed.